**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Northern Division)**

| | |
|---|---|
| **ANDREW VANDERZIEL, INDIVIDUALLY AND AS PERSONAL REPRESENTATIVE OF THE ESTATE OF JOSHUA VANDERZIEL, DECEASED**<br>94 Goose Creek<br>Pittsboro, North Carolina 27312<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>**ANNE ARUNDEL COUNTY, MARYLAND**<br>　SERVE ON: Gregory J. Swain, Esq.<br>　　　　　Anne Arundel County Attorney<br>　　　　　2660 Riva Road<br>　　　　　Annapolis, Maryland 21401<br><br>(Anne Arundel County)<br><br><br>**OFFICER ALEXANDER MASON RODRIGUEZ, INDIVIDUALLY AND IN HIS CAPACITY AS AN ANNE ARUNDEL COUNTY POLICE OFFICER**<br>　SERVE ON: Alexander Mason Rodriguez<br>　　　　　6221 Posey Street<br>　　　　　Frederick, Maryland 21703<br><br>(Frederick County)<br><br>　　　　　Defendants. | **JURY TRIAL DEMANDED**<br><br>Case No. _____ |

## **COMPLAINT**

Plaintiffs Andrew VanderZiel ("Andrew"), individually and as administrator of the Estate

of Joshua VanderZiel ("Joshua"), deceased (collectively "Plaintiffs"), by and through their

attorneys, Grant & Eisenhofer P.A., assert the following Complaint against Defendants, Anne

Arundel County, Maryland ("AAC") and Anne Arundel County Police Officer Alexander Mason Rodriguez, individually and in his official capacity as a police officer for the Anne Arundel County Police Department ("Officer Rodriguez"), and in support thereof, aver as follows:

## PARTIES

1.      Plaintiff Andrew VanderZiel, individually and as Administrator of the Estate of Joshua VanderZiel, is and was at all material times a resident of Pittsboro, North Carolina. At all relevant times, decedent Joshua VanderZiel was a resident of Maryland.

2.      On September 17, 2024, Andrew VanderZiel was appointed Personal Representative of the Estate of Joshua VanderZiel by the Register of Wills for Anne Arundel County, Maryland.

3.      Defendant Anne Arundel County, Maryland is a political subdivision of the State of Maryland, with its principal offices located at 44 Calvert Street, Annapolis, Maryland 21401.

4.      Defendant Anne Arundel County, Maryland owns, operates, manages, directs, and controls the Anne Arundel County Police Department, which employed police officers, including Defendant Police Officer Alexander Mason Rodriguez.

5.      Defendant Alexander Mason Rodgriguez is an individual who resides at 6221 Posey Street, Frederick, Maryland 21703 in Frederick County, Maryland. At all relevant times, he was a police officer employed by the Anne Arundel County Police Department and is being sued in his individual capacity and in his official capacity as an employee of the Anne Arundel County Police Department.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343 because Plaintiffs assert federal civil rights claims pursuant to 42 U.S.C. § 1983.

Pursuant to 28 U.S.C. § 1367(a), this Court has supplemental jurisdiction under the state law claims asserted herein because those claims are so closely related to Plaintiffs' federal claims they form part of the same "case and controversy."

7.      This Court has personal jurisdiction over the Defendants pursuant to Fed. R. Civ. P. 4(k)(1)(A) and Md. Code Ann., Cts. & Jud. Proc. § 6-102(a), because Anne Arundel County is organized under the laws of Maryland, and Defendant Rodriguez is domiciled in Maryland. Alternatively, this Court has specific personal jurisdiction over Defendant Rodriguez under Md. Code Ann., Cts. & Jud. Proc. § 6-103(b)(1) and (3) because the Defendant performed work in the State and the alleged tortious acts and injuries occurred entirely within the State of Maryland.

8.      Venue is proper in this district under 28 U.S.C. § 1391(b) because the events giving rise to the claims asserted in this Complaint occurred in this judicial district.

## FACTUAL ALLEGATIONS

### THE DEATH OF JOSHUA VANDERZIEL AT THE HANDS OF ANNE ARUNDEL COUNTY POLICE OFFICER ALEXANDER MASON RODRIGUEZ

9.      In the early morning hours of August 10, 2024, Joshua was riding his motorcycle in Anne Arundale County, Maryland.[1]

10.      At approximately 4:08 a.m., Joshua drove into a Shell gas station located at 3460 Laurel Fort Meade Road. *See* **Exhibit A** at ¶ 4.

11.      While Joshua was parked, a black sport utility vehicle with the word "Police" in reflective letters on the side entered the gas station and stopped in front of Joshua's motorcycle. *Id.* at ¶ 7.

---

[1] Criminal Indictment attached hereto as **Exhibit A**; *see also* 2025 IID Annual Report attached hereto as **Exhibit B** at 8; *see also* Attorney General Press Release attached hereto as **Exhibit C**.

12.     The officer inside the vehicle, later identified as Officer Rodriguez of the AACPD, did not speak with Joshua at the gas station, did not identify himself as law enforcement, did not detain Joshua, did not signal to him not to operate his motorcycle, and did not tell Joshua that he was not free to leave.

13.     Upon completing his business at the Shell, Joshua safely rode his motorcycle around the black SUV, exited the parking lot, and drove onto Route 198. *Id*.

14.     Without explanation, Officer Rodriguez then sped out of the Shell gas station and followed Joshua dangerously close behind. *Id*. at ¶¶ 8-9.

15.     Officer Rodriguez did not activate his lights or sirens.

16.     He did not notify AACPD, or anyone else, that he was pursuing a motorcycle, nor did he obtain permission to do so. *Id*. at ¶¶ 32-33, 38-43.

17.     Joshua continued to drive his motorcycle with Rodriguez's black SUV following dangerously behind. *Id*. at ¶ 10.

18.     Joshua entered Prince George's County, Maryland, and then Howard County, Maryland, with the black SUV silently pursuing him at dangerous speeds. *Id*. at ¶¶ 10-11.

19.     At no point during this time did Officer Rodriguez activate his lights or sirens, identify himself to Joshua as a police officer, try to pull Joshua over, notify AACPD or anyone else that he was engaging in the pursuit of a motorcycle or that he was exiting Anne Arundel County, or obtain permission from a superior to do so. *Id*. at ¶¶ 32-33, 38-43.

20.     Three minutes later, at approximately 4:11 am, with Officer Rodriguez still aggressively and silently pursuing him, Joshua turned to look behind him at his pursuer. At that moment, a commercial flatbed truck turned onto Washington Boulevard. *Id*. at ¶ 14.

21.    Distracted by Officer Rodriguez's dangerous conduct, Joshua crashed into the side of the truck ("the accident" or the "incident"). He was thrown from his motorcycle and suffered severe blunt force trauma. *Id*. at ¶¶ 14, 19-20.

22.    Impact damage on the back of Joshua's helmet confirms that at the time of the crash, he was looking at Officer Rodriguez.  At impact, Officer Rodriguez had been unlawfully pursuing Joshua for over four miles through three counties.

23.    On impact, Officer Rodriguez slammed on his brakes. But rather than stop and render aid, Officer Rodriguez made an abrupt U-turn and fled the scene. *Id*. at ¶¶ 15-16.

24.    Footage from Expert Auto Repair and Tire, a nearby business, captured Officer Rodriguez in flight. *Id*.

25.    Officer Rodriguez never reported the accident. Instead, with callous disregard for Joshua's life and constitutional rights, Officer Rodriguez returned to work the rest of his shift as if nothing happened.

26.    Unlike Officer Rodriguez, however, three witnesses on the scene, including the truck driver, stopped and called 911 for help. *Id*. at ¶ 17.

27.    Howard County Police Department ("HCPD") officers responded and initiated an investigation. *Id*.

28.    By the time HCPD and emergency personnel arrived, Officer Rodriguez had long since fled. The on-scene witnesses, however, reported that a police vehicle was chasing Joshua when the crash occurred. *Id*. at ¶ 18.

29.    HCPD pronounced Joshua dead while on scene. An autopsy later revealed his cause of death was multiple blunt force injuries resulting from the collision caused by his being chased into the side of the truck. *Id*. at ¶¶ 18-20.

30.    The subsequent investigation revealed both Officer Rodriguez's involvement and his misconduct, specifically:

a. Officer Rodriguez did not notify AACPD dispatch that he was departing Anne Arundel County, Maryland, and entering Prince George's County, Maryland, while engaged in a chase;

b. Officer Rodriguez did not notify AACPD dispatch that he was leaving Prince George's County, Maryland, and entering Howard County, Maryland, while engaged in a chase;

c. On August 10, 2024, Officer Rodriguez chased Joshua for approximately 4.3 miles and did not activate his emergency equipment, including lights and sirens;

d. On August 10, 2024, during the approximate 4.3-mile-long chase, Officer Rodriguez did not notify AACPD dispatch that he was engaged in a chase;

e. On August 10, 2024, during the approximate 4.3-mile-long chase, Officer Rodriguez did not notify a supervisor that he was engaged in a chase;

f. On August 10, 2024, during the approximate 4.3-mile-long chase, Officer Rodriguez did not obtain implicit or explicit permission from a supervisor to engage in a chase;

g. On August 10, 2024, during the approximate 4.3-mile-long chase, Officer Rodriguez did not notify AACPD dispatch that he was leaving Anne Arundel County, Maryland;

h. On August 10, 2024, during the approximate 4.3-mile-long chase, Officer Rodriguez did not notify a supervisor that he was leaving Anne Arundel County, Maryland;

i. On August 10, 2024, after the collision, Officer Rodriguez did not stop at the scene;

j. On August 10, 2024, after the collision, Officer Rodriguez did not return to the scene;

k. Officer Rodriguez did not notify AACPD dispatch of a collision that occurred on or about August 10, 2024;

l. Officer Rodriguez did not notify a supervisor of a collision that occurred on or about August 10, 2024;

m. Officer Rodriguez did not request emergency medical assistance for the collision that occurred on or about August 10, 2024;

n. Officer Rodriguez did not notify any AACPD personnel who were on duty from August 9, 2024, to August 10, 2024, of a collision that occurred on or about August 10, 2024;

o. On or about August 10, 2024, after the collision occurred, Officer Rodriguez did not render assistance to Joshua;

p. Officer Rodriguez failed to write a report about the crash; and

q. These material omissions about the circumstances of the crash were an effort to conceal the chase and collision.

31. Joshua was just 21 years old when his life was cut short by Officer Rodriguez and AAC. As a result of Defendants' conduct, set forth throughout, Joshua suffered: (1) excruciating physical pain and suffering before his death; (2) severe emotional suffering and mental anguish, fear, embarrassment, shame, despair, hopelessness; (3) death; and (4) funeral and burial expenses, all of which are recoverable by Joshua's Estate, through Plaintiff Andrew VanderZiel, as the Estate's duly-appointed personal representative.

32. As a direct and proximate result of Defendants' conduct, including the violation of Joshua's 14th Amendment Rights, Plaintiffs individually have, *inter alia*, suffered: (1) severe emotional distress and mental anguish, including other pain and suffering; (2) loss of moral support; and (3) loss of the society and companionship of their son, all of which damages, injuries, and suffering will in reasonable probability continue into the future and for the remainder of the Plaintiffs' life.

**ANNE ARUNDEL COUNTY POLICE OFFICER ALEXANDER MASON RODRIGUEZ'S CRIMINAL INDICTMENT FOR THE KILLING OF JOSHUA VANDERZIEL**

33. On April 2, 2025, AACPD's Officer Rodriguez was indicted in Howard County, Maryland, for his actions on August 10, 2024.

34.    Officer Rodriguez was charged with, among other things, Manslaughter by Vehicle or Vessel – Gross Negligence and Criminal Negligence and Failure of Driver to Remain at Scene of Accident Resulting in Death.

35.    On April 20, 2026, during his sentencing hearing before the Honorable Maurice C. Frazier, Officer Rodriguez entered into a binding plea agreement in which he pled guilty to leaving the scene of an accident involving death – a felony in the State of Maryland.

36.    During the sentencing hearing, Judge Fraizer stated:

> There is a deep responsibility for those in view of power, whether Judges, police officers, attorneys, politicians, whoever. With those who are called to serve, we have an expectation that they serve with distinction and pride. They do so with an adherence that there is something greater than themselves. That service extends beyond just the myopic designs that one may have. There's a self, sort of reward in serving our community to give ourselves, our time, our resources, whatever the case may be, something much larger than who we are to our members of our community. I am deeply disappointed because of the absolute dereliction of duty in this case, the divorce of professionalism. I can take account from the record in the Attorney General's Memorandum and the arguments by counsel that Mr. Rodriguez was a fairly new officer, and that the stop, which was not litigated at all, may or may not have been one of constitutional muster… The Defendant in this case had a duty and an obligation to perform without prejudice, to adhere to the law, and to answer the call of those chosen protectors of our community. And Mr. Rodriguez failed.[2]

## ANNE ARUNDEL COUNTY AND POLICE OFFICER ALEXANDER MASON RODRIGUEZ'S LIABILITY FOR JOSHUA VANDERZIEL'S DEATH

### *Police Officer Alexander Mason Rodriguez's dangerous pursuit of Joshua VanderZiel violated Joshua VanderZiel's constitutional rights*

37.    At all relevant times, Officer Rodriguez was engaged in an unjustified and unlawful vehicular pursuit of Joshua VanderZiel.

38.    At no point did Officer Rodriguez have any lawful justification to pursue Joshua.

---

[2] *See* April 20, 2026 Official Transcript of Proceedings Disposition Hearing attached hereto as **Exhibit D** at 22:16-24:13.

39.    In the aftermath, Officer Rodriguez fled, failing to render aid to Joshua, failing to notify anyone, including his supervisor, of the crash and circumstances thereof, failing to request emergency medical assistance for the collision he caused, and failing to write a report about the crash. *See* **Exhibit A** at ¶¶ 44-52.

## COUNT I

### 42 U.S.C. § 1983 — 14TH AMENDMENT SUBSTANTIVE DUE PROCESS VIOLATION
### (All Plaintiffs Against Defendant Police Officer Alexander Mason Rodriguez, individually and in his capacity as a Police officer for Anne Arundel County)

40.    All preceding allegations are incorporated by reference as if fully set forth herein.

41.    Count I is alleged by all Plaintiffs against Officer Alexander Mason Rodriguez.

42.    Plaintiffs claim damages for the injuries set forth above under 42 U.S.C. Section 1983 against Defendant Officer Alexander Mason Rodriguez for the violation of Joshua's clearly established constitutional rights.

43.    Plaintiffs claim damages for the injuries set forth above under 42 U.S.C. § 1983 against Defendant Officer Alexander Mason Rodriguez for the underlying constitutional violations perpetrated against Joshua as laid out above.

44.    Defendant Officer Alexander Mason Rodriguez, individually and/or under color of state law with negligence, gross negligence, malice, deliberate indifference, and/or intent to harm, and in doing so, violated Joshua's due process rights, leading to his death by, without limitation:

   a. Initiating an unconstitutional and unjustified high-speed chase;

   b. Initiating a chase without any justification.

   c. If justified, failing to detain Joshua at the gas station, to avoid the risks associated with a chase;

   d. If justified, failing to signal to Joshua with lights and/or sirens that he was trying to pull him over;

9

e. Failing to use lights and sirens to alert Joshua and other motorists of his presence and intentions;

f. Failing to notify AACPD dispatch that he was departing Anne Arundel County, Maryland, and entering Prince George's County, Maryland, while engaged in a chase;

g. Failing to notify AACPD dispatch that he was leaving Prince George's County, Maryland, and entering Howard County, Maryland, while engaged in a chase;

h. Violating AACPD's chase policy;

i. Failing to notify a supervisor that he was engaged in a chase;

j. Targeting Joshua with no justification;

k. Initiating a police chase despite an absence of probable cause;

l. Initiating a police chase despite not witnessing or suspecting Joshua committed any crime;

m. Failing to notify a supervisor that he was that he was leaving Anne Arundel County, Maryland;

n. Chasing Joshua for approximately 4.3 miles and failing to activate his emergency equipment, including lights and sirens;

o. Failing to obtain implicit or explicit permission from a supervisor to engage in a chase;

p. Failing to stop at the scene after the collision;

q. Failing to notify AACPD dispatch of a collision that occurred;

r. Failing to notify a supervisor of a collision that occurred;

s. Concealing the chase and the fatal accident;

t. Failing to render medical aid to Joshua after the crash;

u. Failing to request emergency medical assistance for the collision that occurred;

v. Failing to notify any AACPD personnel who were on duty from August 9, 2024, into August 10, 2024, of a collision that occurred;

w. Failing to render  medical aid and assistance to Joshua;

10

x.  Failing to return to the scene;

y.  Failing to write a report about the crash;

z.  Engaging in a high-speed pursuit when Defendant Officer Rodriguez knew or should have known that the potential for serious bodily injury outweighed any government interest;

aa. Initiating the pursuit when Defendant Officer Rodriguez knew or should have known that the potential for harm, danger, and/or serious bodily to Joshua;

bb. Failing to consider roadway conditions and time of day when initiating and continuing the pursuit;

cc. To the extent apprehension was necessary, failing to recognize and use alternative means to apprehend Joshua;

dd. Failing to appropriately coordinate the apprehension of Joshua, if justified, with other members of the police departments;

ee. Failing to appropriately coordinate, initiate, continue, and/or terminate an interjurisdictional pursuit;

ff. Failing to keep a proper lookout on the roadway for potential hazards to the vehicle that Defendant Officer Rodriguez operated and to the subject of his pursuit;

gg. Driving at excessive speeds and by continuing the pursuit which encouraged Joshua to continue fleeing on his respective vehicle (thereby prolonging the pursuit);

hh. Failing to use all auditory and visual alert systems, including vehicle horns, lights and sirens at Defendant Officer Rodriguez's disposal to alert other vehicles nearby, including the vehicle that Joshua was operating, of the pursuit;

ii. Failing to terminate the pursuit when Defendant Officer Rodriguez knew or should have known that the potential for serious bodily injury outweighed any government interest;

jj. Failing to follow, adhere to, and apply police department policies and guidelines regarding the initiation, continuance, and termination of a pursuit and safety during a pursuit;

kk. Failing to understand and/or follow the commands of the AACPD's respective supervising officers concerning the pursuit and apprehension of Joshua;

ll. Covering up his involvement in the chase and crash;

11

mm. Engaging in the conduct outlined herein that violated Joshua's clearly established statutory and constitutional rights;

nn. Engaging in the conduct outlined here that a reasonable official would understand violated Joshua's clearly established statutory and constitutional rights;

oo. Engaging in behavior outlined herein that shocked the conscience;

pp. Engaging in conduct outlined herein that demonstrated his intent to injure Joshua;

qq. Engaging in conduct outlined here, which demonstrated his deliberate indifference to Joshua's constitutional rights.

rr. Operating his police motor vehicle without due regard to the rights, safety, and position of surrounding vehicles, including Joshua's; and,

ss. Violating the statutes of the State of Maryland governing the operation of motor vehicles on streets and highways.

45.    As a result of the above actions, Officer Rodriguez deprived Joshua of life and/or liberty, and has violated Plaintiffs' clearly established Fourteenth Amendment right under the United States Constitution and applicable case law to substantive due process of law.

46.    These violations of AAC and AACPD policy, which were clearly established at the time of Joshua's death, violated his rights under the Fourteenth Amendment to the Constitution of the United States and are actionable under 42 U.S.C. § 1983.

47.    Defendant Officer Rodriguez's conduct constitutes a state-created danger and was so egregious that it rises to a level that shocks the conscience.

48.    As a direct and proximate result of Defendant Officer Rodriguez's acts and omissions, Joshua suffered: (1) excruciating physical pain and suffering before his death; (2) severe emotional suffering and mental anguish, fear, embarrassment, shame, despair, hopelessness; (3) death; and (4) funeral and burial expenses, all of which are recoverable by Joshua's Estate, through Plaintiff Andrew VanderZiel, as the Estate's duly-appointed personal representative.

12

49.     As a direct and proximate result of Defendant Officer Rodriguez's acts and omissions, including the violation of Joshua's Fourteenth Amendment Rights, Plaintiffs individually have, *inter alia*, suffered: (1) severe emotional distress and mental anguish, including other pain and suffering; (2) loss of moral support; and (3) loss of the society and companionship of their son, all of which damages, injuries, and suffering will in reasonable probability continue into the future and for the remainder of the Plaintiffs' life.

50.     Defendant Officer Rodriguez's acts and omissions were intentional, malicious, and/or involved reckless or callous indifference to Joshua and his federally protected rights, justifying an award of punitive damages so as to prevent a recurrence of such misconduct and to deter others from engaging in similar misconduct.

## COUNT II

### 42 U.S.C. § 1983 — MONELL LIABILITY
### (All Plaintiffs Against Defendant Anne Arundel County)

51.     All preceding allegations are incorporated by reference as if fully set forth herein.

52.     Count II is alleged by Plaintiff against Anne Arundel County.

53.     Defendant Officer Rodriguez acted under the color of law, and under the authority of one or more interrelated *de facto* policies, practices, and/or customs of AAC to violate Plaintiffs' rights as set forth herein.

54.     Prior to August 10, 2024, it was a *de facto* policy, practice, and/or custom of the AAC, through its respective police departments/officers, chiefs of police, mayors, and municipal councils, to inadequately supervise and train their police officers, including Defendant Officer Rodriguez, concerning adequate vehicle pursuit and motorcycle bias policies and practices, thereby failing to adequately discourage constitutional violations on the part of their police officers. Upon information and belief, AAC did not require appropriate in-service training or re-

13

training of police officers who were known to engage in improper, intentional, willful, malicious, reckless, and/or negligent vehicle pursuits and motorcycle bias.

55.     It was the *de facto* policy, practice, and/or custom of AAC, through their respective police departments/officers, chiefs of police, mayors, and municipal councils, to permit unauthorized, inappropriate and/or illegal pursuits of vehicles and/or motorcycles, notwithstanding any written policy statements to contrary.

56.     AAC, acting through its respective police departments/officers, chiefs of police, mayors, and municipal councils, have adopted and continue to maintain a recognized and accepted policy, custom, and/or practice of systematically engaging in dangerous and improper vehicle pursuits and motorcycle bias, without regard to the model and accepted vehicle pursuit and motorcycle bias policies and guidelines, which conduct has resulted in subjecting other persons, including innocent individuals like Joshua, to unjustifiable risks of property damage, personal injury, and death.

57.     AAC, acting through its respective police departments/officers, chiefs of police, mayors, and municipal councils, have adopted and continue to maintain a recognized and accepted policy, custom, and/or practice of systematically engaging in dangerous and improper vehicle pursuits and motorcycle bias, by failing to train, failing to re-train, failing to discipline for policy violations and failing to intervene in inappropriate chases.

58.     AAC, acting through its respective police departments/officers, chiefs of police, mayors, and municipal councils, was fully aware of the dangers posed by vehicle pursuits and motorcycle bias and the resultant need for proper training and supervision of their police officers, but AAC was deliberately indifferent to those risks and failed to properly train and supervise their police officers regarding those risks.

14

59.     As a result of the above-described practices, policies, and/or customs, AAC's respective police officers, including Defendant Officer Rodriguez, believed that their actions would not be monitored by supervisory police officers and/or other employees of AAC, would not be subject to any oversight or discipline, would not result in any re-training, and that this improper conduct would not be investigated or sanctioned, but would be tolerated and condoned by AAC.

60.     Defendant Rodriguez's constitutional violations, set forth above, were the result of AAC's unconstitutional behavior set forth herein.

61.     As a direct and proximate result of the above actions, AAC caused Joshua to be deprived of life and/or liberty, and have therefore violated Plaintiffs' Fourteenth Amendment right under the United States Constitution to substantive due process of law.

## COUNT III

### MARYLAND STATE LAW — NEGLIGENCE
**(All Plaintiffs Against Defendant Officer Alexander Mason Rodriguez, individually and in his capacity as a Police officer for Anne Arundel County)**

62.     All preceding allegations are incorporated by reference as if fully set forth herein.

63.     Count III is alleged by all Plaintiffs against Defendant Officer Alexander Mason Rodriguez.

64.     Officer Rodriguez was the agent, servant, workman, and employee of AAC, and, at all relevant times, was engaged in the service and the performance of his duties as a police officer employed by, or as an agent of, AAC.

65.     The negligence, carelessness, and/or recklessness of Defendant Officer Rodriguez, acting at all times relevant hereto as a police officer of AAC's respective police department, AACPD, was the direct and proximate cause of the accident and the injuries and damages sustained by Plaintiffs. This conduct consisted of, but was not limited to:

a. Initiating an unconstitutional and unjustified high-speed chase;

b. Initiating a chase without any justification.

c. If justified, failing to detain Joshua at the gas station, to avoid the risks associated with a chase;

d. If justified, failing to signal to Joshua with lights and/or sirens that he was trying to pull him over;

e. Failing to use lights and sirens to alert Joshua and other motorists of his presence and intentions;

f. Failing to notify AACPD dispatch that he was departing Anne Arundel County, Maryland, and entering Prince George's County, Maryland, while engaged in a chase;

g. Failing to notify AACPD dispatch that he was leaving Prince George's County, Maryland, and entering Howard County, Maryland, while engaged in a chase;

h. Violating AACPD's chase policy;

i. Failing to notify a supervisor that he was engaged in a chase;

j. Targeting Joshua with no justification;

k. Initiating a police chase despite an absence of probable cause;

l. Initiating a police chase despite not witnessing or suspecting Joshua committed any crime;

m. Failing to notify a supervisor that he was that he was leaving Anne Arundel County, Maryland;

n. Chasing Joshua for approximately 4.3 miles and failing to activate his emergency equipment, including lights and sirens;

o. Failing to obtain implicit or explicit permission from a supervisor to engage in a chase;

p. Failing to stop at the scene after the collision;

q. Failing to notify AACPD dispatch of a collision that occurred;

r. Failing to notify a supervisor of a collision that occurred;

16

s. Concealing the chase and the fatal accident;

t. Failing to render medical aid to Joshua after the crash;

u. Failing to request emergency medical assistance for the collision that occurred;

v. Failing to notify any AACPD personnel who were on duty from August 9, 2024, into August 10, 2024, of a collision that occurred;

w. Failing to render assistance to Joshua;

x. Failing to return to the scene;

y. Failing to write a report about the crash;

z. Engaging in a high-speed pursuit when Defendant Officer Rodriguez knew or should have known that the potential for serious bodily injury outweighed any government interest;

aa. Initiating the pursuit when Defendant Officer Rodriguez knew or should have known that the potential for harm, danger, and/or serious bodily to Joshua;

bb. Failing to consider roadway conditions and time of day when initiating and continuing the pursuit;

cc. To the extent apprehension was necessary, failing to recognize and use alternative means to apprehend Joshua;

dd. Failing to appropriately coordinate the apprehension of Joshua, if justified, with other members of the police departments;

ee. Failing to appropriately coordinate, initiate, continue, and/or terminate an interjurisdictional pursuit;

ff. Failing to keep a proper lookout on the roadway for potential hazards to the vehicle that Defendant Officer Rodriguez operated and to the subject of his pursuit;

gg. Driving at excessive speeds and by continuing the pursuit which encouraged Joshua to continue fleeing on his respective vehicle (thereby prolonging the pursuit);

hh. Failing to use all auditory and visual alert systems, including vehicle horns, lights and sirens at Defendant Officer Rodriguez's disposal to alert other vehicles nearby, including the vehicle that Joshua was operating, of the pursuit;

ii. Failing to terminate the pursuit when Defendant Officer Rodriguez knew or should have known that the potential for serious bodily injury outweighed any government interest;

jj. Failing to follow, adhere to, and apply police department policies and guidelines regarding the initiation, continuance, and termination of a pursuit and safety during a pursuit;

kk. Failing to understand and/or follow the commands of the AACPD's respective supervising officers concerning the pursuit and apprehension of Joshua;

ll. Covering up his involvement in the chase and crash;

mm. Engaging in the conduct outlined herein that violated Joshua's clearly established statutory and constitutional rights;

nn. Engaging in the conduct outlined here that a reasonable official would understand violated Joshua's clearly established statutory and constitutional rights;

oo. Engaging in behavior outlined herein that shocked the conscience;

pp. Engaging in conduct outlined herein that demonstrated his intent to injure Joshua;

qq. Engaging in conduct outlined here, which demonstrated his deliberate indifference to Joshua's constitutional rights.

rr. Operating his police motor vehicle without due regard to the rights, safety, and position of surrounding vehicles, including Joshua's; and,

ss. Violating the statutes of the State of Maryland governing the operation of motor vehicles on streets and highways.

66. As a direct and proximate result of the negligent, careless, and/or reckless conduct of Officer Rodriguez, each Plaintiff sustained damages, including those articulated herein.

67. As a direct and proximate result of Defendant Officer Rodriguez's acts and omissions, Joshua suffered: (1) excruciating physical pain and suffering before his death; (2) severe emotional suffering and mental anguish, fear, embarrassment, shame, despair, hopelessness; (3) death; and (4) funeral and burial expenses, all of which are recoverable by Joshua's Estate, through Plaintiff Andrew VanderZiel, as the Estate's duly-appointed personal representative.

18

68.     As a direct and proximate result of Defendant Officer Rodriguez's acts and omissions, Plaintiffs individually have, *inter alia*, suffered: (1) severe emotional distress and mental anguish, including other pain and suffering; (2) loss of moral support; and (3) loss of the society and companionship of their son, all of which damages, injuries, and suffering will in reasonable probability continue into the future and for the remainder of the Plaintiffs' life.

69.     Defendant Officer Rodriguez's acts and omissions were intentional, malicious, and/or involved reckless or callous indifference to Joshua, justifying an award of punitive damages so as to prevent a recurrence of such misconduct and to deter others from engaging in similar misconduct.

## COUNT IV

**MARYLAND STATE LAW — RECKLESS DISREGARD OF SAFETY**
**(All Plaintiffs Against Officer Alexander Mason Rodriguez, individually and in his capacity as a Police officer for Anne Arundel County)**

70.     All preceding allegations are incorporated by reference as if fully set forth herein.

71.     Count IV is alleged by all Plaintiffs against Officer Alexander Mason Rodriguez.

72.     Officer Rodriguez had knowledge of the extreme danger to which he subjected members of the public, including Joshua, during the vehicle pursuit. He was aware of the inherent danger of a high-speed chase in that area. He was also aware that he was able to terminate the risk of harm by stopping or altering the pursuit.

73.     Officer Rodriguez intentionally failed to adhere to his duties as police officer with respect to public safety and vehicle pursuits, as described above, knowing or having reason to know that his acts and omissions created an unreasonable and substantial risk of harm to members of the public, including Joshua.

74. The improper conduct of Officer Rodriguez, as alleged herein, constituted the tort of reckless disregard of safety. *See*, §500m 2 Restatement of Torts, 2d.

75. As a result of Officer Rodriguez's conduct, Plaintiffs suffered damages, including those articulated herein.

76. As a direct and proximate result of Defendant Officer Rodriguez's acts and omissions, Joshua suffered: (1) excruciating physical pain and suffering before his death; (2) severe emotional suffering and mental anguish, fear, embarrassment, shame, despair, hopelessness; (3) death; and (4) funeral and burial expenses, all of which are recoverable by Joshua's Estate, through Plaintiff Andrew VanderZiel, as the Estate's duly-appointed personal representative.

77. As a direct and proximate result of Defendant Officer Rodriguez's acts and omissions, Plaintiffs individually have, *inter alia*, suffered: (1) severe emotional distress and mental anguish, including other pain and suffering; (2) loss of moral support; and (3) loss of the society and companionship of their son, all of which damages, injuries, and suffering will in reasonable probability continue into the future and for the remainder of the Plaintiffs' life.

78. The actions and conduct of Officer Rodriguez exceeded the normal standards of decent conduct and were willful, malicious, oppressive, outrageous, and unjustifiable and thus compensatory and punitive damages are necessary and appropriate.

## <u>COUNT V</u>

### MARYLAND STATE LAW — NEGLIGENCE (VICARIOUS LIABILITY)
### (All Plaintiffs Against Defendant Anne Arundel County)

79. All preceding allegations are incorporated by reference as if fully set forth herein.

80. Count V is alleged by all Plaintiffs against Anne Arundel County.

81.      Officer Rodriguez was the agent, servant, workman, and employee of AAC, and, at all relevant times, was engaged in the service and the performance of his duties as a police officer employed by, or as an agent of, AAC.

82.      On August 10, 2024, prior to and during the course of the pursuit, Defendant Officer Rodriguez was operating a vehicle owned by AAC and had AAC's permission to operate said vehicle.

83.      Prior to August 10, 2024, Defendant Officer Rodriguez was hired by AAC and it was AAC's responsibility to ensure that he was properly trained on policies and procedures related to vehicle pursuits and motorcycle bias.

84.      Prior to August 10, 2024, it was AAC's responsibility to ensure that AACPD was administering proper training to all ACC officers, including Defendant Officer Rodriguez, related to vehicle pursuits and motorcycle bias.

85.      The negligence, carelessness, and/or recklessness of AAC, through its agent, Defendant Officer Rodriguez, who, at all times relevant hereto, was acting within the scope of his employment with, or agency from AAC, was the direct and proximate cause of the accident and the injuries and damages sustained by Plaintiffs. That conduct consisted of, but was not limited to:

   a.  Initiating an unconstitutional and unjustified high-speed chase;

   b.  Initiating a chase without any justification.

   c.  If justified, failing to detain Joshua at the gas station, to avoid the risks associated with a chase;

   d.  If justified, failing to signal to Joshua with lights and/or sirens that he was trying to pull him over;

   e.  Failing to use lights and sirens to alert Joshua and other motorists of his presence and intentions;

f.  Failing to notify AACPD dispatch that he was departing Anne Arundel County, Maryland, and entering Prince George's County, Maryland, while engaged in a chase;

g.  Failing to notify AACPD dispatch that he was leaving Prince George's County, Maryland, and entering Howard County, Maryland, while engaged in a chase;

h.  Violating AACPD's chase policy;

i.  Failing to notify a supervisor that he was engaged in a chase;

j.  Targeting Joshua with no justification;

k.  Initiating a police chase despite an absence of probable cause;

l.  Initiating a police chase despite not witnessing or suspecting Joshua committed any crime;

m.  Failing to notify a supervisor that he was that he was leaving Anne Arundel County, Maryland;

n.  Chasing Joshua for approximately 4.3 miles and failing to activate his emergency equipment, including lights and sirens;

o.  Failing to obtain implicit or explicit permission from a supervisor to engage in a chase;

p.  Failing to stop at the scene after the collision;

q.  Failing to notify AACPD dispatch of a collision that occurred;

r.  Failing to notify a supervisor of a collision that occurred;

s.  Concealing the chase and the fatal accident;

t.  Failing to render medical aid to Joshua after the crash;

u.  Failing to request emergency medical assistance for the collision that occurred;

v.  Failing to notify any AACPD personnel who were on duty from August 9, 2024, into August 10, 2024, of a collision that occurred;

w.  Failing to render assistance to Joshua;

x.  Failing to return to the scene;

22

y. Failing to write a report about the crash;

z. Engaging in a high-speed pursuit when Defendant Officer Rodriguez knew or should have known that the potential for serious bodily injury outweighed any government interest;

aa. Initiating the pursuit when Defendant Officer Rodriguez knew or should have known that the potential for harm, danger, and/or serious bodily to Joshua;

bb. Failing to consider roadway conditions and time of day when initiating and continuing the pursuit;

cc. To the extent apprehension was necessary, failing to recognize and use alternative means to apprehend Joshua;

dd. Failing to appropriately coordinate the apprehension of Joshua, if justified, with other members of the police departments;

ee. Failing to appropriately coordinate, initiate, continue, and/or terminate an interjurisdictional pursuit;

ff. Failing to keep a proper lookout on the roadway for potential hazards to the vehicle that Defendant Officer Rodriguez operated and to the subject of his pursuit;

gg. Driving at excessive speeds and by continuing the pursuit which encouraged Joshua to continue fleeing on his respective vehicle (thereby prolonging the pursuit);

hh. Failing to use all auditory and visual alert systems, including vehicle horns, lights and sirens at Defendant Officer Rodriguez's disposal to alert other vehicles nearby, including the vehicle that Joshua was operating, of the pursuit;

ii. Failing to terminate the pursuit when Defendant Officer Rodriguez knew or should have known that the potential for serious bodily injury outweighed any government interest;

jj. Failing to follow, adhere to, and apply police department policies and guidelines regarding the initiation, continuance, and termination of a pursuit and safety during a pursuit;

kk. Failing to understand and/or follow the commands of the AACPD's respective supervising officers concerning the pursuit and apprehension of Joshua;

ll. Covering up his involvement in the chase and crash;

23

mm. Engaging in the conduct outlined herein that violated Joshua's clearly established statutory and constitutional rights;

nn. Engaging in the conduct outlined here that a reasonable official would understand violated Joshua's clearly established statutory and constitutional rights;

oo. Engaging in behavior outlined herein that shocked the conscience;

pp. Engaging in conduct outlined herein that demonstrated his intent to injure Joshua;

qq. Engaging in conduct outlined here, which demonstrated his deliberate indifference to Joshua's constitutional rights.

rr. Operating his police motor vehicle without due regard to the rights, safety, and position of surrounding vehicles, including Joshua's; and,

ss. Violating the statutes of the State of Maryland governing the operation of motor vehicles on streets and highways.

86. The negligence, carelessness, and/or recklessness of AAC, through its agent, AACPD, who, at all times relevant hereto, was acting within the scope of its agency with or from AAC, was the direct and proximate cause of the accident and the injuries and damages sustained by Plaintiffs. That conduct consisted of, but was not limited to:

a. Failing to adequately supervise their police officers, including Officer Rodriquez;

b. Failing to adequately train their police officers, including Officer Rodriguez;

c. Failing to adequately and properly train their officers, agents and/or employees, including Officer Rodriguez, on proper vehicle pursuit procedures;

d. Failing to adequately and properly train their officers, agents and/or employees, including Officer Rodriguez, on rules and regulations regarding motorcycle bias;

e. Failing to adequately discourage constitutional violations on the part of their police officers;

f. Failing to require appropriate in-service training or re-training of police officers;

g. Failing to require appropriate in-service training or re-training of police officers who were known to engage in improper, intentional, willful, reckless, and/or negligent vehicle pursuits;

24

h. Failing to require appropriate in-service training or re-training of police officers who were known to engage in motorcycle bias;

i. Failing to adequately and properly train their officers, agents and/or employees, including Officer Rodriguez, on proper reporting policies and procedures;

j. Failing to adequately and properly train their officers, agents and/or employees, including Officer Rodriguez, on intervene and/or report constitutional violations and misconduct committed by their fellow police officers;

k. Adopting a *de facto* policy of disregarding violations of policy and procedure;

l. Adopting and continuing to maintain a recognized and accepted policy, custom, and/or practice of allowing their officers, agents and/or employees, including Officer Rodriguez, to systematically engage in dangerous and improper vehicle pursuits;

m. Adopting and continuing to maintain a recognized and accepted policy, custom, and/or practice of allowing their officers, agents and/or employees, including Officer Rodriguez, to systematically engage in motorcycle bias;

n. Knowingly allowing violations of their vehicle pursuit policy;

o. Knowingly allowing violations of their motorcycle bias policy;

p. Exhibiting deliberate indifference to the risks and dangers posed by failing to adequately and properly train their officers, agents and/or employees, including Officer Rodriguez;

q. Allowing an atmosphere and workplace environment where officers, agents and/or employees, including Officer Rodriguez, believed that their actions would not be properly monitored by supervisory police officers;

r. Failing to effectively train, supervise and/or discipline police officers with respect to vehicle pursuit policies;

s. Failing to select and hire police officers that would competently adhere to vehicle pursuit policies;

t. Failing to discipline police officers who violated pursuit policies, thereby creating and fostering an environment in which police officers believed their violations of pursuit policies would be tolerated and/or condoned;

u. Permitting police officers to initiate pursuits when those officers knew or should have known that the potential for harm, danger and/or serious injury outweighed the seriousness of the suspected offense;

25

v. Failing to effectively intervene to terminate improper pursuits;

w. Failing to train and/or supervise police officers to consider roadway conditions and time when initiating and continuing a pursuit;

x. Failing to train police officers when it is appropriate to use alternative means in lieu of pursuit;

y. Failing to have the tools and equipment necessary for safe and effective pursuits;

z. Failing to train and/or supervise police officers regarding how to conduct a safe and effective interjurisdictional pursuit;

aa. Failing to train, supervise and/or discipline police officers with respect to the dangers posed by driving at excessive speeds or taking actions that would cause a fleeing suspect to do the same;

bb. Failing to train and/or discipline officers with respect to the effective use all auditory and visual alert systems at their disposal in police patrol vehicles; and

cc. Failing to put an effective chain of command in place during the pursuit.

87. AAC is liable for the negligent, careless and/or reckless acts of its agents, servants, workmen and/or employees, AACPD and Defendant Officer Rodriguez, as set forth herein pursuant to the doctrine of *respondeat superior* and is thus liable to Plaintiffs for damages, including those articulated herein.

88. As a direct and proximate result of AAC's acts and omissions, Joshua suffered: (1) excruciating physical pain and suffering before his death; (2) severe emotional suffering and mental anguish, fear, embarrassment, shame, despair, hopelessness; (3) death; and (4) funeral and burial expenses, all of which are recoverable by Joshua's Estate, through Plaintiff Andrew VanderZiel, as the Estate's duly-appointed personal representative.

89. As a direct and proximate result of AAC's acts and omissions, Plaintiffs individually have, *inter alia*, suffered: (1) severe emotional distress and mental anguish, including other pain and suffering; (2) loss of moral support; and (3) loss of the society and companionship

of their son, all of which damages, injuries, and suffering will in reasonable probability continue into the future and for the remainder of the Plaintiffs' life.

90.     The actions and conduct of AAC exceeded the normal standards of decent conduct and were willful, malicious, oppressive, outrageous, and unjustifiable and thus compensatory and punitive damages are necessary and appropriate.

## COUNT VI

### MARYLAND STATE LAW — NEGLIGENCE (DIRECT LIABILITY)
### (All Plaintiffs Against Defendant Anne Arundel County)

91.     All preceding allegations are incorporated by reference as if fully set forth herein.

92.     Count VI is alleged by all Plaintiffs against the Anne Arundel County.

93.     The negligence, carelessness, and/or recklessness of AAC, which was the direct and proximate cause of the accident and the injuries and damages sustained by Plaintiffs consists of, but is not limited to:

a.  Failing to adequately supervise their police officers, including Officer Rodriquez;

b.  Failing to adequately train their police officers, including Officer Rodriguez;

c.  Failing to adequately and properly train their officers, agents and/or employees, including Officer Rodriguez, on proper vehicle pursuit procedures;

d.  Failing to adequately and properly train their officers, agents and/or employees, including Officer Rodriguez, on rules and regulations regarding motorcycle bias;

e.  Failing to adequately discourage constitutional violations on the part of their police officers;

f.  Failing to require appropriate in-service training or re-training of police officers;

g.  Failing to require appropriate in-service training or re-training of police officers who were known to engage in improper, intentional, willful, reckless, and/or negligent vehicle pursuits;

h.  Failing to require appropriate in-service training or re-training of police officers who were known to engage in motorcycle bias;

27

i.   Failing to adequately and properly train their officers, agents and/or employees, including Officer Rodriguez, on proper reporting policies and procedures;

j.   Failing to adequately and properly train their officers, agents and/or employees, including Officer Rodriguez, on intervene and/or report constitutional violations and misconduct committed by their fellow police officers;

k.   Adopting a *de facto* policy of disregarding violations of policy and procedure;

l.   Adopting and continuing to maintain a recognized and accepted policy, custom, and/or practice of allowing their officers, agents and/or employees, including Officer Rodriguez, to systematically engage in dangerous and improper vehicle pursuits;

m.   Adopting and continuing to maintain a recognized and accepted policy, custom, and/or practice of allowing their officers, agents and/or employees, including Officer Rodriguez, to systematically engage in motorcycle bias;

n.   Knowingly allowing violations of their vehicle pursuit policy;

o.   Knowingly allowing violations of their motorcycle bias policy;

p.   Exhibiting deliberate indifference to the risks and dangers posed by failing to adequately and properly train their officers, agents and/or employees, including Officer Rodriguez;

q.   Allowing an atmosphere and workplace environment where officers, agents and/or employees, including Officer Rodriguez, believed that their actions would not be properly monitored by supervisory police officers;

r.   Failing to effectively train, supervise and/or discipline police officers with respect to vehicle pursuit policies;

s.   Failing to select and hire police officers that would competently adhere to vehicle pursuit policies;

t.   Failing to discipline police officers who violated pursuit policies, thereby creating and fostering an environment in which police officers believed their violations of pursuit policies would be tolerated and/or condoned;

u.   Permitting police officers to initiate pursuits when those officers knew or should have known that the potential for harm, danger and/or serious injury outweighed the seriousness of the suspected offense;

v.   Failing to effectively intervene to terminate improper pursuits;

28

w.  Failing to train and/or supervise police officers to consider roadway conditions and time when initiating and continuing a pursuit;

x.  Failing to train police officers when it is appropriate to use alternative means in lieu of pursuit;

y.  Failing to have the tools and equipment necessary for safe and effective pursuits;

z.  Failing to train and/or supervise police officers regarding how to conduct a safe and effective interjurisdictional pursuit;

aa. Failing to train, supervise and/or discipline police officers with respect to the dangers posed by driving at excessive speeds or taking actions that would cause a fleeing suspect to do the same;

bb. Failing to train and/or discipline officers with respect to the effective use all auditory and visual alert systems at their disposal in police patrol vehicles; and

cc. Failing to put an effective chain of command in place during the pursuit.

94.    As a direct result of the negligent, careless, and/or reckless conduct of AAC, Plaintiffs sustained damages, including those detailed herein.

95.    As a direct and proximate result of AAC's acts and omissions, Joshua suffered: (1) excruciating physical pain and suffering before his death; (2) severe emotional suffering and mental anguish, fear, embarrassment, shame, despair, hopelessness; (3) death; and (4) funeral and burial expenses, all of which are recoverable by Joshua's Estate, through Plaintiff Andrew VanderZiel, as the Estate's duly-appointed personal representative.

96.    As a direct and proximate result of AAC's acts and omissions, Plaintiffs individually have, *inter alia*, suffered: (1) severe emotional distress and mental anguish, including other pain and suffering; (2) loss of moral support; and (3) loss of the society and companionship of their son, all of which damages, injuries, and suffering will in reasonable probability continue into the future and for the remainder of the Plaintiffs' life.

97. The actions and conduct of AAC exceeded the normal standards of decent conduct and were willful, malicious, oppressive, outrageous, and unjustifiable and thus compensatory and punitive damages are necessary and appropriate.

## COUNT VII

**MARYLAND STATE LAW – WRONGFUL DEATH (Md. Code Ann., Cts. & Jud. Proc. § 3-904)**
**(Plaintiff Andrew VanderZiel, as Administrator of the Estate of Joshua VanderZiel Against All Defendants)**

98. All preceding allegations are incorporated by reference as if fully set forth herein.

99. Count VII is alleged by Plaintiff Andrew VanderZiel, as Administrator of the Estate of Joshua VanderZiel against all Defendants.

100. Plaintiff Andrew VanderZiel brings this action on behalf of himself and as representative of the wrongful death beneficiaries of Joshua VanderZiel, pursuant to Md. Code Ann., Cts. & Jud. Proc. § 3-904: Wrongful Death Actions and claims all damages recoverable under this Rule.

101. The injuries sustained by Joshua as set forth herein, including, but not limited to, his death, were directly and proximately caused by the conduct of Defendants, as set forth herein.

102. As a direct and proximate result of the intentional, willful, malicious, reckless, careless, and/or negligent conduct of Defendants, Joshua's wrongful death beneficiaries suffered, are suffering, and will continue to suffer damages, injuries, and losses, including, but not limited to, a loss of financial support and contributions beneficiaries would have received from Joshua, including monies which Joshua would have provided for items such as clothing, food, shelter, medical care, education, entertainment, recreation, and gifts.

103. As a direct and proximate result of the intentional, willful, malicious, reckless, careless and/or negligent conduct of Defendants, Joshua's wrongful death beneficiaries have been,

continue to be and will in the future be wrongfully deprived of sums of monies which Joshua would have contributed to their support.

104.    As a direct and proximate result of the intentional, willful, malicious, reckless, careless and/or negligent conduct of Defendants, Joshua's wrongful death beneficiaries have been, continue to be and will in the future be wrongfully deprived of loss of society, companionship, comfort, parental care, attention, advice, counsel, training, guidance and education from Joshua.

105.    As a direct and proximate result of the intentional, willful, malicious, reckless, careless and/or negligent conduct of Defendants, Joshua's wrongful death beneficiaries have been, continue to be and will in the future suffer severe mental anguish and emotional pain and suffering.

106.    As a direct and proximate result of intentional, willful, malicious, reckless, careless and/or negligent conduct of Defendants, Joshua's wrongful death beneficiaries have been caused to suffer the aforesaid damages, for which Plaintiff Andrew VanderZiel, as Administrator of the Estate of Joshua VanderZiel, hereby asserts this claim.

## COUNT VIII

**MARYLAND STATE LAW — SURVIVAL ACT (Md. Code Ann., Cts. & Jud. Proc. § 6-401 and Md. Code Ann., Est. & Trusts § 7-401)**
**(Plaintiff Andrew VanderZiel, as Administrator of the Estate of Joshua VanderZiel Against All Defendants)**

107.    All preceding allegations are incorporated by reference as if fully set forth herein.

108.    Count VIII is alleged by Plaintiff Andrew VanderZiel, as Administrator of the Estate of Joshua VanderZiel against all Defendants.

109.    Plaintiff brings this action on behalf of the Estate of Joshua VanderZiel pursuant Md. Code Ann., Est. & Trusts § 7-401: Powers and Authority of Personal Representative and Md. Code Ann., Cts. & Jud. Proc. § 6-401: Effect of Death of Party on Actions and claims all damages recoverable thereunder.

110.    The injuries sustained by Joshua as set forth herein, including, but not limited to, his death, were proximately caused by the intentional, willful, malicious, reckless, careless, and/or negligent conduct of Defendants.

111.    As a direct and proximate result of the intentional, willful, malicious, reckless, careless, and/or negligent conduct of Defendants, Joshua suffered extreme pain and suffering, extreme mental anguish, serious disabling and permanent injuries, including death, as described herein and, loss of earnings throughout his life expectancy, for which Plaintiff Andrew VanderZiel, as Administrator of the Estate of Joshua VanderZiel, here makes claim.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs Andrew VanderZiel individually and as administrator of the Estate of Joshua VanderZiel, deceased, respectfully request that the Court enter judgment in their favor and against Defendants on all counts of the Complaint, and award relief as follows:

A. Compensatory damages against the Defendants, jointly and severally, in an amount in excess of $75,000, the exact amount to be determined at trial;

B. Punitive damages against the Defendants, jointly and severally, for their conduct in an amount to be determined at trial, in order that such award will deter similar prohibited behavior by Defendants and other law enforcement officers in the future;

C. Pre-judgment and post-judgment interest and recovery of Plaintiffs' costs, including reasonable attorneys' fees pursuant to 42 U.S.C. § 1988 and 42 U.S.C. § 1920, against Defendants, jointly and severally;

D. Any and all other relief to which Plaintiffs may be entitled.


Respectfully Submitted,

**Dated:** July 13, 2026                                **GRANT & EISENHOFER P.A.**

                                                        */s/ Steven Kelly*

32

Steven J. Kelly (AIS 0312160392)
3600 Clipper Mill Road, Suite 240
Baltimore, Maryland 21211
410-204-4528 (phone)
302-622-7001 (fax)
skelly@gelaw.com

Elizabeth A. Bailey (*Pro Hac Vice Forthcoming*)
Chelsea L. Dearden (*Pro Hac Vice Forthcoming*)
123 Justison Street
Wilmington, DE 19801
302-622-7086
ebailey@gelaw.com
cdearden@gelaw.com

*Attorneys for Plaintiffs Andrew VanderZiel, individually and as administrator of the Estate of Joshua VanderZiel, deceased*