# EXHIBIT D

IN THE CIRCUIT COURT FOR HOWARD COUNTY, MARYLAND


STATE OF MARYLAND,

     vs.                          CASE NO. C-13-CR-25-188

ALEXANDER RODRIGUEZ,

       *Defendant,*

_____

OFFICIAL TRANSCRIPT OF PROCEEDINGS

DISPOSITION HEARING


Ellicott City, Maryland

Monday, April 20, 2026

BEFORE:

HONORABLE MAURICE C. FRAZIER, Judge

APPEARANCES:

    For the State:     JULIE H. SHAPIRO, ESQUIRE
                            ERIN E. ROGERS, ESQUIRE
                            Assistant Attorney Generals

    For the Defendant:  PETER S. FAYNE, ESQUIRE
                            JOHN BONETA, ESQUIRE


**Mary E. Sybert**
*Official Court Reporter*
Howard County Circuit Court
Ellicott City, MD 21043

**P R O C E E D I N G S**

(9:01 a.m.)

***

THE COURT:  Let's recall the matter.

MS. SHAPIRO:  Yes, Your Honor.  Good morning, Your Honor.  Calling the matter of State vs. Alexander Rodriguez, case number C-13-CR-25-000188.  Julie Shapiro and Erin Rogers are here on behalf of the Attorney General's Office for the State.

MS. ROGERS:  Good morning, Your Honor.

THE COURT:  Good morning.

MR. FAYNE:  Good morning, Your Honor, may I please the Court.  Peter Fayne, and my co-counsel.

MR. BONETA:  John Boneta, Your Honor.

MR. FAYNE:  On behalf of Mr. Alexander Rodriguez, who is present and standing to my right.  Sir, can you state your name for the record?

THE DEFENDANT:  Alexander Rodriguez.

MR. FAYNE:  Thank you.

THE COURT:  All right.  Folks, please make yourselves comfortable, sir.  All right.  And ma'am, we're here for disposition.  I've reviewed the Memoranda in Support of Sentencing that was filed.  I've taken notes on it.  I'm happy to hear from you in disposition.

MS. SHAPIRO:  Thank you, Your Honor.  Just

briefly, as your Courts are aware, we are here for this is an ABA binding plea. Mr. Rodriguez tendered a plea of guilt back on April 9th of this year. And just briefly, the facts were obviously read into the record back on April 9th.

But what this case involves and the families, you can see there are a lot of family members, friends and family support here on behalf of Joshua VanderZiel, the victim in this case.

But just to briefly reiterate, back on August 10th of 2024, when Mr. Rodriguez was employed as a police officer for the Anne Arundel County Police Department, at approximately 4:00 that evening, Officer Rodriguez was a patrol officer in the Western District, attempted to block, using his police cruiser, attempted to block Mr. VanderZiel in the Shell Gas Station when Mr. VanderZiel had pulled into the gas station on his motorcycle.

As he attempted to use the police cruiser to block Mr. VanderZiel in, Mr. VanderZiel rode around the police cruiser, at which point in time, Officer Rodriguez conducted an unauthorized police pursuit. He chased Mr. Rodriguez through three jurisdictions on that motorcycle, failing to comply with any of the pursuit policies in Anne Arundel County.

Mr. Rodriguez failed to use any emergency equipment, did not turn on his body-worn camera, did not

call in the pursuit requesting permission to conduct a pursuit, and did not contact any of the three jurisdictions through which he drove through.  During this approximate 4.3 mile pursuit, Mr. Rodriguez drove through Anne Arundel County, Laurel City, and eventually into Howard County.

As a result of this unauthorized pursuit, both of these vehicles were traveling on the road in excess of 90 miles per hour until Joshua Rodriguez (*sic*) was chased by Officer Rodriguez -- when he was chased by Joshua VanderZiel, excuse me, when he was chased by Officer Rodriguez, ended up entering Howard County within about twenty seconds of entering Howard County.  Joshua Vandersill rode into a flatbed truck that was making a left-hand turn into Route 1.  Mr. VanderZiel was thrown off his motorcycle and died at the scene.

At that point in time, Mr. Rodriguez did not stop at the scene, did not exit his patrol vehicle, did not render any aid, did not call in the accident at any time whatsoever.  And in fact, what Mr. Rodriguez did is he slammed on his brakes, made a U-turn, and drove back to Anne Arundel County, completing his shift, not telling anyone at all what happened that day, and really acting like continuing to finish out a shift as if nothing had happened.

And that's essentially the facts that happened back on August 10th, 2024, for which Mr. Rodriguez has

tempered a plea to the felony count of leaving the scene in the accident, being involved in that accident, which resulted in death.

As you can see, there are many people here today from his family. His parents are here, he has his grandmother here, many family and friends. At this point in time, your Honor, the state has provided multiple Impact Statements to the Court.

There is one other Impact Statement that the mom has provided me this morning that she would like me to read to the Court.

THE COURT: Please, I invite you.

MS. SHAPIRO: Okay. And if your mom's, Nicole, if you just want to stand up for a minute. And that is his mom. Mr. VanderZiel's father is here as well, standing next to him.

THE COURT: Good morning.

VICTIM IMPACT STATEMENT

Of NICOLE VANDERZIEL

BY MS. SHAPIRO:

Your Honor, there are no words to describe the anguish of losing my son. It is a devastation a mother was never meant to carry. August 10th, 2024, that day burns like a fire. I could not give sound to the words that broke my heart and broke our world. I still see the horror on

each face as the news landed.  I still hear the weeping, the cries and devastation in every voice as our lives change forever.

It has been 611 days since Joshua was killed.  It has been 611 days that the man responsible has been free to live.  My son was buried with a full military honors for service to our country and lays to rest at Quantico National Cemetery.

He was buried in his navy white dress, his head covered due to the horrific nature of his injuries, his hands gloved, his body cold.  My heart is buried with my son.

Every day I fight to be here to rebuild a life that holds a measure of peace, for there is no comfort.  His absence is everywhere because his presence was so bright. We have been traumatized over and over.  On our way home from our son's funeral, a new nightmare unfolded.

The details of Joshua's death were not fully disclosed until we had to wait eight months suspended in a state of confusion, anxiety and mourning.  Once the Attorney General's investigation was complete, it began a free fall where we learned the shocking news that a police officer had illegally chased our son to death, left him there, did not even have the conscience to tell anyone, showing no humanity or remorse.

The pain of this loss is endless. Every day exhausting, we are forever changed. I will never hear his voice or see his smile again. I will never see him marry or become a father. I watch videos over and over, look at his photo as time continues on relentlessly. There will never be another video, there will never be another time that our family can gather as a whole. We are fractured.

I cannot imagine enduring year after year under the weight of this grief. This loss carries on, not just for our family, but for all the lives he touched. We are gathered this week to remember the joy, the light he brought and brings us still.

Every person who knew him has stories of the incredible impact he had on our lives. The only way to see the loss is to see a glimpse of the person Joshua was in this world. Joshua's life radiated joy. When I picture him, he is always smiling, that beautiful smile that made his eyes twinkle with mischief.

He filled my days with sunshine and our home with laughter. He had a unique view of the world and decided it was his calling to lighten the everyday, the mundane, a life concept he called sillyism. He had a clever sense of humor when always doing the most ridiculous and interesting things. He was jovial, jolly, charismatic, and loved shenanigans. He was everyone's best friend and invested his

time and heart into the people he cared for.

He could talk to anyone about anything, anywhere, regardless of culture, language, rank, economics. He was infinitely and endlessly curious and learning something new just for the enjoyment of it. He taught himself to write with his left hand as a teenager just because. He taught himself quantum physics, how to play the piano, how to crochet.

He was approachable, open, and welcoming, talking to all ages, inviting others into his world. He wanted to make the most out of every day he had no time to waste. He said to me the month before his death, this life is so amazing and beautiful, it's crazy, Ma.

Joshua loved languages. He began learning Japanese in elementary, then Chinese, then Russian. He had a natural affinity. His dream was to study at the Defense Language Institute and become fluent in languages.

He was philosophical and political and had a deep faith. He loved having honest, intense conversations with people. He led Russian Bible studies in the Navy and encouraged other sailors in their faith through their challenges.

Many people he knew suffered from depression and mental illness, and he supported them with his general care and compassion. He was planning to be a Suicide Hotline

volunteer.

He dreamed of traveling to Japan, Thailand, Russia. He wanted to marry and have children. He overcame so many challenges and did not let the difficulties discourage him from pressing on and accomplishing his goals. Please allow me to share the letter I wrote him when he left for boot camp February of '22.

"Joshua, raising you and watching your journey to become the man you are today has been one of my greatest privileges and joys. You still make me smile and laugh every day. I will miss this.

Your humor, your laugh from downstairs, your voice, the sound of your car coming and going. You're a good man. You stand apart. You have honor, conviction, determination, resilience, insight.

Continue to be the leader God created you to be. You have such a big future, and I'm so very proud of you, son. God has his hands over you, and you're here for a purpose. Love, Mom." That was from her letter February 22nd to Joshua.

I will carry this profound loss every day. I will mourn the beautiful soul of my son until I no longer breathe or walk on this earth. I will carry him, his stories, his life, his love. There will be no consequence or punishment long enough for the arrogant, remorseless, heartless

disregard the officer had for my son's life and no measure to quantify the ripple effects of losing Joshua.

This man did not act on impulse to protect. His actions were calculated and intentional, thought out over each mile as he chased our son. He chose to pursue and chase. He watched Joshua in his last moments on earth, watched him hit the truck, and made the choice to flee like a coward.

To the Defendant, your actions brought a devastation, a revocable pain over the loss of my son Joshua. We are broken but not destroyed. You have no power to take his life, his soul, his spirit. You did not extinguish the brilliance of my son. He shines still.

Your Honor, we have one more individual that would like to speak and read two of the letters. If I could please call him up to the table.

THE COURT: Please.

MS. SHAPIRO: Okay. Phillip Nims.

THE COURT: And counsel, do we need to have this person sworn?

MS. SHAPIRO: Okay.

MR. FAYNE: No, Your Honor.

THE CLERK: Raise your right hand.

THE COURT: No, no, there's no need to be sworn.

THE CLERK: Oh.

THE COURT:  Sir, just state your name, please.

MR. NIMS:  Good morning, Your Honor.  My name is Phillip Nims.

THE COURT:  Phillip?

MR. NIMS:  Yes, Your Honor.

THE COURT:  No, what's the last name?

MR. NIMS:  Nims.

THE COURT:  Nims.

MR. NIMS:  N-I-M-S.

THE COURT:  Thank you, Mr. Nims.  Happy to hear from you.

MR. NIMS:  Thank you, Your Honor.

TERRIS BRANDERSON

Read by PHILIP NIMS

VICTIM IMPACT STATEMENT

BY MR. NIMS:

May I please the Court, I will first be reading a letter from Terrence Branderson, who is one of Joshua VanderZiel's shipmates.

To the VanderZiel family, I had the privilege of knowing Joshua VanderZiel beginning in June 2022 when I was assigned as a squad leader at the Defense Language Institute.  At first, our relationship was simple.  He was a young man with questions, often curious about how things worked and how to navigate the system.

Over time, that curiosity revealed a sharp, capable mind and a unique personality that left a lasting impression on me. As we progressed into our second semester, I came to deeply admire Joshua. He carried a sense of freedom and positivity that was rare. He approached life with enthusiasm, humor, and an openness that drew people in.

He later shared with me that he had ADHD, and instead of seeing that as a limitation, I saw it as part of what made him exceptional. He processed information quickly, especially in Russian, where he excelled and immersed himself in the language and culture. He was brilliant, and I told him that often because it was true.

Our friendship continued at Goodfellow Air Force Base where we were classmates and neighbors. During that time, I was dealing with both personal challenges and a hostile environment in the class. There was an individual who repeatedly made racist remarks, and it created a situation difficult for me.

Joshua noticed, and without being asked, he chose to sit beside me and made sure I was not alone. He stayed there consistently until the situation was resolved. When I asked him why he did that, he simply said that he wanted to give me a break. That moment has stayed with me ever since. No one had ever stood up for me like that before.

He also helped me in practical ways.  When I was having issues with my living situation, he paid attention, took initiative, and helped set in motion the process that ultimately led to me getting my own room.  He cared enough to act.

At Fort Meade, our friendship continued to grow. While we may not have been considered best friends by others, he was the closest friend I had.  We spent time together, talked about life, and shared experiences that I will always value.  Even in small moments, he made life feel lighter.

He was thoughtful, reliable, and true to his word. I remember one night after we spent time together, I asked him to text me when he got home safely.  He promised he would, and he did.  That reflects the kind of person he was.

The last time I saw him, I picked him up after his car broke down.  We shared a meal, talked for a while, and I took him home.  We had plans to meet again on August 10th. I was looking forward to it all week.  That day never came.

Joshua had a profound impact on my life.  He showed kindness without being asked.  He stood up for others.  He listened, supported, and cared in ways that many people do not.  I still think about him often, and will forever keep him in my prayers.

To Alex Rodriguez, you may not have known Joshua

the way I did, but I did.  I knew his character, his heart, and the way he showed up for people.  He was the kind of person who noticed when someone was struggling and stepped in without being asked.  He was the kind of person who stood beside others when they needed support.  He was thoughtful, intelligent, and full of life.

Because of your actions, that life is gone. Because of your decisions, the person who once stood up for me when no one else would is no longer here to stand beside anyone again.  And what is hardest to understand is not only what happened, but what happened after.  A man who needed help was left alone in the dark.  That is something I will never be able to reconcile.

I'm not writing this out of hatred.  I'm writing this because Joshua mattered.  His life had weight.  His presence made a difference.  I carry his memory with me.  I carry the lessons he taught me.  And I carry the reality that he should still be here.

I hope you fully understand the impact of what was taken.  Not just from his family, but from everyone whose life he touched.  I cannot begin to understand the depth of your loss.  But I want you to know that he mattered deeply. Not just to you, but to those who had the honor of knowing him.

Respectfully, Terrace Grandison.

Now, Your Honor, if I may please the Court, I will give my own statement.

***

THE COURT:  Yes, sir.

TERRIS BRANDERSON

Read by PHILIP NIMS

VICTIM IMPACT STATEMENT

MR. NIMS:  So, in the summer of 2022, I, myself, arrived at the Defense Language Institute after graduating from Navy boot camp.  And the night that I got there, there was a gentleman who I could just tell was so full of life and so kind and caring.  And he helped me settle in, into my room.  He gave me his phone number and made sure I had everything I needed for a smooth transition to the Defense Language Institute.

And little did I know that this gentleman would go on to change my life forever.  And that man, of course, was Joshua VanderZiel.  And that was 2022.  For the next year and some change, I would spend almost every day with Josh, known by me and the rest of his friends as Vander.

We would eat breakfast together, walk to class together, hang out together after class, go on excursions during the weekend, late night drives, cigar smokes on the beach.  And we would just talk.  We would talk about life.  We would talk about relationships.  We would talk about

language, philosophy, everything you could ever imagine.

And as an introvert myself, someone who struggles with mental health, he never judged me for it a single time. And he was the only person, to this day, that could get me out of my room when I would rather be doing something else. He was the only one.  And the same could be said for so many other people.

In the short two years that I knew Josh, he changed my life and made such a deep impact on my life.  I will never forget.  And the same could be said for many others.  Many of the people in the gallery, Your Honor, have only known Josh for a couple years, less than a year.  But the impact that he had on them was so deep that they're here today and his life and his legacy will carry on for the rest of their lives.

And to the Defendant in this case, sir, you are everything that Josh was not.  Josh was a man who showed up every day with integrity, loyalty, care for others.  Sir, when you did a U-turn that day after Josh struck that truck, you displayed a staggering lack of integrity, no morality, self-interest.

The fact that this was never reported to anyone at any stage just shows that you knew what you did was wrong, but you were trying to preserve your own self, your own career.  And that is something that Josh would have never

done.

You see, Josh did a lot of things that many people might have thought were questionable, but he always owned up to it with a smile and a joke. But you ran. You see, Josh would always run towards things, but you ran away. Sir, that is cowardice.

Josh was a man who did his duty as a sailor. You see, I don't know how many of you know this, but as a Russian linguist, Josh worked on a twenty four-hour watch floor, the night shift. What does that mean? Well, while Your Honor and everyone here were asleep in our beds, sleeping peacefully, Josh was awake, listening intently for threats to our nation. He did his duty. You did not do your duty that day.

And one more thing, and then I will conclude my remarks. As was previously mentioned, Josh would have been friends with anyone, no matter their race, their gender, political affiliation, their religion. He would have talked to anyone for hours. And I think the thing that's most telling about Josh is he would have been friends with you, Mr. Rodriguez. Had you not taken his life that day, he would have invited you for drinks, played ping pong with you, and talked to you for hours. You two would have been friends. But that will never happen because of what you did that day.

I conclude my remarks.  Thank you, Your Honor.

***

THE COURT:  Thank you, Mr. Nims.

MS. SHAPIRO:  Your Honor, at this time, the State would just, again, the sentence that we've agreed upon in this case was important for the State.  The sentence that Mr. Rodriguez plead to a felony count would reflect the seriousness of these actions.

The fact that he did leave the scene of this terrible, tragic accident where someone died, fled the scene as a police officer, obviously, who takes an oath.  And never reported the accident and failed to render aid.

It was important that he plead for the State's position to the felony count, that he received some period of incarceration.  The agreed upon the sentence that the Court is aware is 5 years of spending 120 days with 2 years' supervised probation.

Mr. Rodriguez and agrees to not pursue any future employment in law enforcement or corrections.  The felony on his record should prevent him from being a police officer ever again.  And also the 100 hours of community service upon his release to pay back to the community.

With that, the State would submit Your Honor.

THE COURT:  Thank you so much.  Mr. Fayne, Mr. Boneta.

MR. FAYNE:  Thank you, Your Honor.  Good morning.

THE COURT:  Good morning.

MR. FAYNE:  May it please the Court.  Peter Fayne and John Boneta on behalf of Mr. Rodriguez.

Your Honor, clearly today is a very emotional day for all parties concerned.  I know for Mr. Rodriguez especially.  And so when I speak this morning, I'll speak not only as his Defense counsel, but I'll speak directly on behalf of my client this morning.

First, on behalf of Alex, he wishes to acknowledge all the friends and family who are here to support him. They know him as a loving son, husband, father, and dear friend.  And they are here standing and sitting beside him because they know how emotional it is for him today.

It's important for the Court, and I know for Mr. Rodriguez, that he has accepted full and complete responsibility for his actions that night.  He's expressed to myself and Mr. Boneta his complete and utter remorse with regard to those actions.  And he extends his deepest condolences to the VanderZiel family.

But I would be remiss if I didn't also mention that a person's worst day in their life does not necessarily define them.  And it certainly should not overshadow all the numerous years of service he has done.

He greatly appreciates the Court accepting the

plea as enunciated by the government.  As the Court has agreed in this case to a binding plea of the 5 years, suspending all but 120 days to be served locally, 2 years of probation with 100 hours of community service, along with the agreement that there will be no further law enforcement opportunities for him.  And the fact that he does and is permitted to file for a Motion for Reconsideration.

I would also add, and we'd ask the Court to consider with regard to the terms of probation, that the Court permit probation to be transferred from Howard County to Frederick County.

We'd also ask the Court to allow my client permission to travel outside the State of Maryland during the probationary period.

Finally, I would ask that there are still some personal matters that my client needs to finalize and take care of.  So on his behalf, I would ask the Court, if the Court would permit him twenty-four hours to take care of those things and he would self-report to the Howard County Detention Facility tomorrow morning in Jessup, just so he can finalize some last minute matters.

With that, Your Honor, we would submit with regard to the Defense.

THE COURT:  Would you advise Mr. Rodriquez of his opportunity to allocute?

MR. FAYNE:  Certainly, Your Honor.  Mr. Rodriguez, this morning before the hearing before His Honor, you have the complete opportunity, if you so choose, to address the Court.  You and I have discussed that opportunity.  And we discussed the fact that what I spoke to the Court this morning covers everything you wish to express to the Court and at this point, there's nothing further you wish to say.  Is that correct?

THE DEFENDANT:  That's correct.

THE COURT:  Okay, and you've made that decision of your own free will, is that correct?

THE DEFENDANT:  Yes.

MR. FAYNE:  Thank you.

THE COURT:  Thank you.  Gentlemen, please, I invite you to be seated.

FINDINGS OF FACT

BY THE COURT:

Oftentimes, in criminal prosecutions, we look to the incident of offense for full articulation of the conduct and behavior of the Defendant or Defendants.

Folks beyond this gallery may not look to the collateral kind of consequences of any Defendant's acts.  And what I mean by that is we usually fixate on the date and time.  Rarely do we go beyond that.  The birthdays missed, the plans for the future, the prayers for happiness and

health, the opportunities for goodwill to be expressed by an individual who will not be here with us.

I agree with Mr. Fayne. We should not be judged by the worst five minutes of our life. But it's not the Court to assess character. I assess conduct. And the conduct is what is reprehensible to this Court.

I would also note there's an agreement between the Attorney General's Office and Defense counsel and Mr. Rodriguez. And I'll further note the original agreement was one in which the Court rejected. I don't mean to castigate the parties here. You've come to your own devices, and I can appreciate that.

Some in the gallery may say that a 5 year sentence spelled to 4 months is not enough to assess fully what happened here today or what happened that night in question.

There's a deep responsibility for those in view of power, whether Judges, police officers, attorneys, politicians, whoever. With those who were called to serve, we have an expectation that they serve with distinction and pride. They do so with an adherence that there is something greater than themselves. That service extends beyond just the myopic designs that one may have. There's a self, sort of reward in serving our community to give ourselves, our time, our resources, whatever the case may be, something much larger than who we are to our members of our community.

I am deeply disappointed because of the absolute dereliction of duty in this case, the divorce of professionalism. I can take account from the record in the Attorney General's Memorandum and the arguments by counsel that Mr. Rodriguez was a fairly new officer, and that the stop, which was not litigated at all, may or may not have been one of constitutional muster.

I also take inventory of my career. I have worked in tandem as a litigator with folks with the Maryland State Police and the Howard County Police Department. Those folks that I have worked with serve with distinction and pride that their North Star professionally goes far beyond whatever myopic designs they have, but to actually protecting and serving. They have carried the mantle of professionalism, those folks, in every instance that I can recall.

I heard from Joshua's mother in her Victim Impact Statement, and I return back to my remarks earlier about it's not just the instant offense that matters. It would carry on the separation of birthdays, weddings, children, grandchildren, the lack of opportunities to rejoice and holidays that we share together as a culture. Those shared values that we hold so deeply together as a people.

The victim, Joshua, or in some instances called Vandy, was a treasured son and a friend. Mr. Nims

remarked, and I'll sort of take note of that, that Joshu was full of life. He had a deep impact on other folks' life instantly, whether you knew him for a short time or a long time. He had a positive impact on the lives of people surrounding him. Mr. Nims has also stated he would have been a friend to anyone.

The parties here made vague comments on the nature of the stop, its legitimacy of the pursuit. For the court, it's a simpler or much more simple calculus. The Defendant in this case had a duty and an obligation to perform without prejudice, to adhere to the law, and to answer the call of those chosen to be protectors of our community. And Mr. Rodriguez failed.

Given what I've read from the Victim Impact Statements, including one from the admiral, given the joint recommendations from the parties, the sentence will be as follows.

                    DISPOSITION

THE COURT: It shall be a 5 year sentence suspending all but 120 days, the balance shall be suspended. This is a binding plea. I would advise Mr. Rodriguez now that any modification of the sentence must be done with the assent of the State.

The length of probation shall be 2 years. Shall be supervised by Parole and Probation. It shall be,

probation shall begin upon his release, and his first appointment shall be with the supervising agency upon his release.

All standard conditions will apply. Fines, costs, and the supervision fee shall be waived. He shall complete 100 hours of community service by April 20, 2028, under the direction of Parole and Probation, and pay all fees.

He shall not seek employment in law enforcement or corrections as well.

Madam State, with respect to the remaining charges.

MS. SHAPIRO: We'd entering a *nol pros* to the remaining charges on the indictment.

THE COURT: And that shall be done. There was a request to transfer his probation to Frederick County. I shall grant that request. I shall deny the request to travel outside the State. And I shall deny twenty four hours to report. He shall report now. Please advise.

MR. FAYNE: Mr. Rodriguez, please stand. His Honor has imposed his sentence this case as that is taking place. There are now certain post-sentencing rights. You have 10 days from today's date to ask for a new trial. 30 days from today to file for an appeal. And 90 days from today's date to ask for a Motion for Reconsideration. All those things must be done in writing, and I will do that on

your behalf.  Do you understand that?

THE DEFENDANT:  Yes.

MR. FAYNE:  Do you have any further questions of myself or of His Honor?

THE DEFENDANT:  No.

THE COURT:  Is there any need to advise with respect to a Three-Judge Panel given the sentence is 5 years?  Suspending by 120?

MR. FAYNE:  I could -- yes, Your Honor.  Mr. Rodriguez, because His Honor is opposed to this over a 3 year period, you do have the right to a Three-Judge Panel.

A Three-Judge Panel is the opportunity to ask three Judges, would not include Judge Frazier, to examine the sentences imposed in this case.  They could decide to either leave it the same, they could reduce it, they could actually modify it up as well.  Do you understand that?

THE DEFENDANT:  Yes.

MR. FAYNE:  That has to be done in writing if we so choose to do that.  Any questions of myself or His Honor about the Three-Judge Panel?

THE DEFENDANT:  No.

MR. FAYNE:  Thank you.

THE COURT:  All right.  The State has *nol prossed*, Defendant's been advised.  Mr. Clerk?

THE CLERK:  Yes, Your Honor.

THE CLERK:  The order.

THE COURT:  Can I be of further service to you?

MS. SHAPIRO:  Thank you, Your Honor.

THE COURT:  Mr. Boneta?

MR. BONETA:  No, sir, thank you.

THE COURT:  Mr. Rodriguez?

MR. FAYNE:  Thank you, Your Honor.

THE COURT:  Mr. Fayne?  Anything at all?

MR. FAYNE:  No, Your Honor, thank you.

THE COURT:  All right.  If there's nothing else, you're excused.

MR. FAYNE:  Thank you.

MS. SHAPIRO:  Thank you, Your Honor.

THE COURT:  Have a great day.

MR. FAYNE:  Thank you, Your Honor.

THE COURT:  Very well, Mr. Fayne.

(The proceedings then concluded at 9:35 a.m.)

                              ***

## REPORTER'S CERTIFICATION

I, Mary E. Sybert, an Official Court Reporter of the Circuit Court for Howard County, Maryland, do hereby certify that I transcribed the foregoing proceedings of case number C-13-CR-25-188, State vs. Alexander Rodriguez, as heard before the Honorable Maurice C. Frazier, as audio digitally recorded in courtroom #5 in the Circuit Court for Howard County, Maryland, on the 20th day of April, 2026, to the best of my skill, ability and judgment.

I further certify that page numbers One through Twenty-Eight, constitutes the official transcript of the proceedings as transcribed by me in a complete and accurate manner.

IN WITNESS WHEREOF, I have hereunto subscribed my signature this 9th day of May, 2026.

*Mary E. Sybert*
Mary E. Sybert
*Official Court Reporter*